UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

REPUBLIC OF BENIN,

                                    Plaintiff,                    06 CV 0870
                                                                  (JGK)(MHD)

            -against -

BEVERLY MEZEI, ROBIN SHIMOFF, and
ALFRED KOLLER,

                                    Defendants.

-------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## CROSS-MOTION FOR SUMMARY JUDGMENT OF
## DEFENDANTS SHIMOFF AND MEZEI AND IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

On the Brief:

Andrew N. Krinsky (AK-0997)
Edward R. Finkelstein (EF-2805)
Kieran B. Morrow (KM-4259)
Todd H. Hesekiel (TH-1289)

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................................1

PRELIMINARY STATEMENT ..................................................................................................1

PROCEDURAL HISTORY..........................................................................................................3

ARGUMENT................................................................................................................................5

I.    GUEDEGBE DID NOT NEED WRITTEN AUTHORIZATION
      TO EXECUTE DEED I ON BEHALF OF BENIN .................................................5
      A.    Guedegbe Was Not Benin's "Agent"
            Within the Meaning of the Statute of Frauds..............................................5
      B.    Benin Acknowledges the Validity of Other Conveyances of Its
            Real Property By Beninese Officials Without Written Authorization.........6

II.   EVEN IF GUEDEGBE REQUIRED WRITTEN AUTHORIZATION,
      THE SALE OF THE LOT TO SHIMOFF IS NEVERTHELESS VALID...........10
      A.    N.Y. Gen. Oblig. L. § 5-703(4)................:...................................................10
      B.    Equitable Estoppel ....................................................................................11

III.  GUEDEGBE HAD ACTUAL AND APPARENT AUTHORITY
      TO EXECUTE THE DEED ON BEHALF OF BENIN .......................................12
      A.    Guedegbe Had Actual Authority to Execute Deed I...................................13
            1.    Defendants Had No Duty of Inquiry.............................................18
            2.    Chasky and the Chasky Letter ......................................................19

IV.   PLAINTIFF'S CLAIMS ARE BARRED BY
      THE TWO INNOCENTS DOCTRINE................................................................21

V.    PLAINTIFF'S CLAIMS ARE BARRED BY N.Y. REAL PROP. L. § 266 ........22

VI.   N.Y. REAL PROP. L. § 329 DOES NOT PROVIDE AN INDEPENDENT
      BASIS FOR CANCELLATION OF THE MEZEI AND SHIMOFF DEEDS .....23

CONCLUSION............................................................................................................................24

## TABLE OF AUTHORITIES

**Page**

**Cases**

*121-129 Broadway Realty, Inc. v. City of Schenectady*, 17 A.D.2d 1016,
233 N.Y.S.2d 963 (3d Dep't 1962)...................................................................................................7


*Bergman v. Krausz*, 19 A.D.3d 186,796 N.Y.S.2d 360 (1st Dep't 2005)......................................10

*Bunge Corp. v. Mfr. Hanover Trust Co.*, 31 N.Y.2d 223, 335 N.Y.S.2d 412
(1972)......................................................................................................................................21, 22

*Burns v. McCormick*, 233 N.Y. 230, 135 N.E. 273, 274 (1922).......................................................9

*C.E. Towers Co. v. Trinidad and Tobago (BWIA Int'l) Airways Corp.*,
903 F. Supp. 515 (S.D.N.Y 1995) ...............................................................................13, 14, 16, 18

*Chan v. Bay Ridge Park Hill Realty Co.*, 213 A.D.2d 467, 623 N.Y.S.2d 896
(2d Dep't 1995)..............................................................................................................................9

*Cinema North Corp., v. Plaza at Latham Assoc.*, 867 F.2d 135 (2d Cir. 1989)..........................5, 6

*Citibank, N.A., v. Chicago Title Ins. Co.* , 214 A.D.2d 212, 632 N.Y.S.2d 779
(1st Dep't 1995) ............................................................................................................................18

*Club Chain of Manhattan, Ltd. v. Christopher & Seventh Gourmet, Ltd.*,
74 A.D.2d 277, 427 N.Y.S.2d 627 (1st Dep't 1980) .....................................................................11

*Commission on Ecumenical Mission and Relations of United Presbyterian
Church in U. S. of America v. Roger Gray, Ltd.*, 27 N.Y.2d 457,
318 N.Y.S.2d 726 (1971)..................................................................................................................9

*Cromer Fin. Ltd. v. Berger*, 245 F. Supp.2d 552 (S.D.N.Y. 2003) ...............................................14

*Curanaj v. Sec. Pac. Nat'l Bank*, 202 A.D.2d 856, 609 N.Y.S.2d 358
(3d Dep't 1994).............................................................................................................................10

*DeMartin v. Farina*, 205 A.D.2d 659, 613 N.Y.S.2d 655, (2d Dep't 1994) ...................................9

*Diocese of Buffalo v. McCarthy*, 91 A.D.2d 1210, 458 N.Y.S.2d 764
(4th Dep't 1983)..................................................................................................................................9

*Felice v. Long Island R.R. Co.*, 426 F.2d 192 (2d Cir. 1970)........................................................17

*First Fidelity Bank v. Gov't of Antigua and Barbados Permanent Mission*,
877 F.2d 189 (2d Cir  1989).............................................................................................................13

*Flax v. B. M. Dev. Corp.*, 35 A.D.2d 565, 313 N.Y.S.2d 591 (2d Dep't 1970) ...............................6

*Fortes v. Estate of Magoon*, 160 A.D.2d 756, 553 N.Y.S.2d 475 (2d Dep't 1990)........................9

*Greene v. Hellman*, 51 N.Y.2d 197, 433 N.Y.S.2d 75, 80 (1980)..................................................14

*Hallock v. State of New York*, 64 N.Y.2d 224, 485 N.Y.S.2d 510 (1984)......................................17

*Health-Loom Corp. v. Soho Plaza Corp.*, 272 A.D.2d 179, 709 N.Y.S.2d 165
(1st Dep't 2000) ...............................................................................................................................12

*Herbert Const. Co. v. Cont'l Ins. Co.*, 931 F.2d 989 (2d Cir. 1991) .............................................18

*Holm v. C.M.P. Sheet Metal Inc.*, 89 A.D.2d 229, 455 N.Y.S.2d 429
(4th Dep't 1982)...............................................................................................................................12

*Karaha Bodas Co. v. Perushaan Pertambangan Minyak Dan Gas Bumi Negra*,
313 F.3d 70 (2d Cir. 2002)..............................................................................................................13

*Karan v. Hoskins*, 22 A.D.3d 638, 803 N.Y.S.2d 666  (2d Dep't 2005) ......................................23

*Karavaos Compania Naviera v. Atlantica Export Co.* 588 F.2d 1 (2d Cir. 1978) ........................17

*King World Prod. v. Fin. News Network*,
660 F. Supp. 1381(S.D.N.Y. 1987) ...................................................................... 13, 15-16, 17, 18

*Koreag, Controle et Revision v. Refco F/X Assoc., Inc.*, 961 F.2d 341
(2d Cir. 1992)...................................................................................................................................13

*Leist v. Tugendhaft*, 64 A.D.3d 687, 882 N.Y.S.2d 521 (2d Dep't 2009) ......................................9

*Lind v. Schenley Indus. Inc.*, 278 F.2d 79 (3d Cir. 1960) .........................................................14, 17

*Masuda v. Kawasaki Dockyard Co.*, 328 F.2d 662 (2d Cir. 1964)................................................17

*Meyerson v. Lawyers Title Ins. Co.*, 39 A.D.2d 190, 333 N.Y.S.2d 33
(1st Dep't 1972) ..........................................................................................................................21, 22

*Minskoff v. American Express Travel Related Servs. Co.*, 98 F.3d 703 (2d Cir. 1996)................14

*Mott v. Devine*, 102 A.D.2d 946, 477 N.Y.S.2d 811 (3d Dep't 1984) ..........................................11

*National Safe Deposit, Savings & Trust Co. v. Hibbs*, 299 U.S. 391, 33 S. Ct. 818 (1913) .........21

*Nesbitt v. Penalver*, 40 A.D.3d 596, 835 N.Y.S.2d 426 (2d Dep't 2007) ........................................9

*Old Republic Nat'l Title Ins. v._Kaufman*, 96-cv 04533 (JSM) ......................................................18

*Pinkava v. Yurkiw*, 64 A.D.3d 690, 882 N.Y.S.2d 687 (2d Dep't 2009).........................................11

*Republic of Benin v. Mezei*, 483 F. Supp. 2d 312 (S.D.N.Y. 2007) ....................................3, 13, 23

*Riverside Research Inst. v. KMGA, Inc.,* 108 A.D.2d 365, 489 N.Y.S.2d 220
(1st Dep't 1985)...................................................................................................................... 13-14

*RLI Ins. Co. v. Athan Contracting Corp.*, 06-CV-05821 (RRM) (MDG)
2009 U.S. Dist. LEXIS 92402, *13 (E.D.N.Y. 2009)................................................................ 13-14

*Robbins v. Kearing*, 66 N.Y.S.2d 537 (Sup. Ct. Broome Co. 1946) ...............................................9

*Scientific Holding Co., Ltd. v. Plessey Inc.*, 510 F.2d 15 (2d Cir. 1974)..................................... 5-6

*Sign Up USA, Inc. v. JCF Assoc.*, 33 A.D.3d 905, 823 N.Y.S.2d 449
(2d Dep't 2006).............................................................................................................................6

*Urgo v. Patel*, 297 A.D.2d 376, 746 N.Y.S.2d 733 (2d Dep 't 2002) .............................................9

*Wu v. Wu*, 288 A.D.2d 104,733 N.Y.S.2d 45 (1st Dep't 2001)......................................................23

*Zev Cohen, LLC v. Fidelity Nat'l Title Ins. Co.*, 831 N.Y.S.2d 689
(Sup. Ct. Kings Co. 2007)..............................................................................................................18

## Statutes

General Obligations Law § 5-703............................................................................................5, 6

N.Y. Gen. Oblig. L. § 5-703(1)....................................................................................................8

N.Y. Gen. Oblig. L. § 5-703(2).............................................................................................5, 6, 11

N.Y. Gen. Oblig. L. § 5-703(4).........................................................................................2, 10, 11

N.Y. Real Prop. L. § 266 ...............................................................................................2, 22, 23

N.Y. Real Prop. L. § 329 ......................................................................................................2, 23, 24

N.Y. Real Prop. L. § 331 ............................................................................................................3, 22

**Rules**

Fed. R. Civ. P. 56.................................................................................................................................1

## INTRODUCTION

This joint memorandum of law is submitted by Defendants Robin Shimoff ("Shimoff") and Beverly Mezei ("Mezei"; Mezei and Shimoff together, the "Defendants") in support of their cross-motion, pursuant to Fed. R. Civ. P. 56, for summary judgment in this action dismissing all of the claims asserted by plaintiff The Republic of Benin ("Plaintiff" or "Benin"), and in opposition to Plaintiff's motion for summary judgment.  Defendants also submit the October 28, 2009, Declaration of Robin Shimoff ("Shimoff Decl." ); the Affidavit of Jacob Selechnik, sworn to October 29, 2009 ("Selechnik Aff."); the Affidavit of Edward Friedman, Esq., sworn to October 27, 2009 ("Friedman Aff."); the Affirmation of M. Nader Aheri, Esq. dated October 22, 2009, ("Aheri Aff."); the Affirmation of Edward R. Finkelstein, Esq. ("Finkelstein Aff."), with accompanying exhibits; the September 29, 2006, Declaration of Beverly Mezei ("Mezei Decl.") dated September 29, 2006, Declaration of Alfred Koller ("Koller Decl."), with accompanying exhibit dated September 29, 2006; and Defendants' Local Rule 56.1 Statement ("Defs. 56.1").

## PRELIMINARY STATEMENT

In this action, Benin seeks to cancel a 2004 deed ("Deed I") by which Benin sold to Shimoff a lot (the "Lot")  abutting the Riverdale, New York residence of Benin's then-Ambassador to the United Nations, Joël Adechi ("Adechi"), and a 2005 deed ("Deed II"; together with Deed I, the "Deeds") by which Shimoff sold the Lot to Mezei.[1]  In this memorandum of law, Shimoff and Mezei show that the Deeds are valid because (i) Thomas Guedegbe ("Guedegbe"), the Beninese official who executed Deed I, did not require a written authorization in order to convey Benin's fee interest in the Lot to Shimoff; (ii) even assuming, *arguendo*, that Guedegbe had needed written authorization to convey the Lot, the sale of the Lot

---

[1] For a more complete counterstatement and statement of the undisputed facts relevant to this motion, the Court is respectfully referred to Defs. 56.1.

to Shimoff is nevertheless valid under N.Y. Gen. Oblig. L. § 5-703(4) and the doctrine of equitable estoppel; (iii) Guedegbe's actual and apparent authority were sufficient to validly convey the Lot upon his execution of Deed I; (iv) Benin's claims are barred by the "two innocents" doctrine; (v) Benin's claims are barred by N.Y. Real Prop. L. § 266; and (vi) N.Y. Real Prop. L. § 329 does not operate to cancel either of the Deeds.

For the same reasons, Benin's argument that summary judgment should be granted in its favor because Guedegbe did not present a written authorization to execute Deed I at the closing of the sale to Shimoff is erroneous. For example, that Guedegbe did not present a written authorization at the closing is simply not dispositive in this case, especially since the transaction was fully performed by both sides. In any event, the pertinent question is whether Guedegbe had actual and/or apparent authority to bind Benin when he executed Deed I. As shown below, Guedegbe had both actual and apparent authority. Benin's challenge to Guedegbe's authority is based only on the *ex post facto* statements and conjectures of its <u>current</u> government officials; it has submitted no evidence from any individual with personal knowledge of the facts and circumstances surrounding the transactions at issue. In fact, Benin has refused to make Guedegbe and Rogatien Biaou ("Biaou") – two Beninese officials intimately involved in the transaction at issue and whom plaintiff compelled to return to Benin to answer for their conduct in this action – available to Shimoff and Mezei for depositions.

Moreover, although Benin insists that Guedegbe acted outside the scope of his authority, Plaintiff, which is allegedly conducting its own investigation into the transaction, has yet to conclude that Guedegbe engaged in any alleged wrongdoing. For Benin to urge that summary judgment in this action is appropriate, while simultaneously acknowledging that it has not yet

been able to reach a conclusion as to Guedegbe's wrongdoing in its own judicial proceeding, is simply illogical.

Accordingly, for the reasons stated herein, Shimoff and Mezei are entitled to summary judgment dismissing Benin's claims, and Benin's motion for summary judgment should be denied.

## PROCEDURAL HISTORY

Benin commenced this action by serving and filing a summons and complaint (the "Prior Complaint") dated February 2, 2006. Following service of the Prior Complaint, Benin sought, and the Court granted, permission for Benin to move for summary judgment prior to commencement of any discovery. In accordance with the Court's permission, Benin served and filed its first motion for summary judgment on July 31, 2006 (the "First Motion"). In its First Motion, Benin urged that the sale from Benin to Shimoff is void because (1) Guedegbe's signature on Deed I is a forgery; (2) Guedegbe did not have authority to execute Deed I under N.Y. Real Prop. L. § 331; and (3) Benin failed to comply with the Foreign Missions Act ("FMA") prior to entering into the transaction with Shimoff.

By opinion and order dated March 21, 2007, Judge John G. Koeltl denied Benin's First Motion, rejecting each of Benin's arguments. Specifically, Judge Koeltl found that Guedegbe's signature on Deed I is not a forgery, since Guedegbe signed his own name to the deed. *Republic of Benin v. Mezei*, 483 F. Supp. 2d 312, 317-18 (S.D.N.Y. 2007) (Koeltl, J.). Judge Koeltl also held that N.Y. Real Prop. L. § 331 could not be invoked to void Deed I because nothing in the statute required that a writing identifying Guedegbe as an individual authorized to execute transfer documents on Benin's behalf be recorded. *Id.* at 318, n.8. Further, Judge Koeltl held that Deed I could not be rendered void based on Benin's non-compliance with the FMA, since

3

Benin could not use the FMA as a sword to strike down a transaction based on Benin 's own non-compliance with the statute. *Id.* at 319-23.

Benin then served and filed an amended complaint dated November 5, 2007, which is now the operative complaint in this action ("Second Am. Compl."). Following service of the Second Am. Compl., the parties commenced discovery. Although Benin deposed several non-party witnesses, Benin never sought to depose defendants Shimoff, Mezei, or defendant Alfred Koller ("Koller").[2] Finkelstein Aff., ¶ 3. Moreover, Benin refused to produce either Guedegbe or Biaou, Benin's Minister of Foreign Affairs and African Integration at the time the Lot was sold to Shimoff, for depositions, claiming that at the time of depositions, neither Guedegbe nor Biaou was a "managing agent" of Benin. *Id.*, ¶ 3. Accordingly, and since Guedegbe and Biaou were compelled to return to Benin to be prosecuted for their alleged wrongdoing (*see* Second Am. Compl., ¶ 21), defendants have been unable to question the individuals directly involved in this transaction and plaintiff has refused to make them available for that purpose.

Plaintiff now moves for summary judgment a second time, urging that Deed I is void because Guedegbe lacked authority to execute it on behalf of Benin. Shimoff and Mezei cross-move for summary judgment.

---

[2] Benin purportedly served a non-party subpoena on Selechnik; however, Benin subsequently released Selechnik from the subpoena without deposing him. Regarding Mezei, Benin deposed her husband Leonard Mezei, but never sought to depose her.

## ARGUMENT

### I.

### GUEDEGBE DID NOT NEED WRITTEN AUTHORIZATION
### TO EXECUTE DEED I ON BEHALF OF BENIN

Benin contends that the conveyance to Shimoff is void because the Statute of Frauds

required Guedegbe to have a writing authorizing him to convey the Lot to Shimoff on behalf of

Benin. *See* plaintiff's Memorandum of Points and Authorizations in Support of Plaintiff's

Motion for Summary Judgment ("Pl. Mem. "), pp. 8-11. Plaintiff is incorrect. Although the

Statute of Frauds requires that "agents" have written authorization to make conveyances of

property, Guedegbe is not an "agent" of Benin within the meaning of the Statute of Frauds. As a

result, Guedegbe did not require written authorization.

A.    Guedegbe Was Not Benin's "Agent" Within the Meaning of the Statute of Frauds

The Statute of Frauds, N.Y. Gen. Oblig. L. § 5-703, provides that "a contract . . . for the

sale, of any real property, or an interest therein, is void unless the contract . . . is in writing,

subscribed by the party to be charged, or by his lawful agent thereunto authorized by writing."

N.Y. Gen. Oblig. L. § 5-703(2). However, since organizational entities cannot act other than

through their representatives, it has long been held that with respect to such organizational

entities and, notwithstanding N.Y. Gen. Oblig. L. § 5-703(2), certain representatives do not

require written authorization to bind the entity they represent. For example, when addressing the

application of N.Y. Gen. Oblig. L. § 5-703(2) to transactions involving corporations, it has long

been the law in New York that a "corporate officer" is "not an 'agent' within the meaning of

[General Obligations Law 5-703]" and "written authorization is not required for an agreement

signed by an officer to be binding upon the corporation." *Cinema North Corp., v. Plaza at

Latham Assoc.*, 867 F.2d 135, 140 (2d Cir. 1989); *See also Scientific Holding Co., Ltd. v. Plessey*

*Inc.*, 510 F.2d 15, 21 (2d Cir. 1974). ("Moreover, New York courts have held that a corporate officer or director is not an ' agent' for purposes of the Statute of Frauds, General Obligations Law § 5-703, requirement that the agent's authority be in writing when executing a contract for the sale or lease for more than one year of real property."); Sign Up USA, Inc. v. JCF Assoc., 33 A.D.3d 905, 907, 823 N.Y.S.2d 449, 451 (2d Dep't 2006) ("As a corporate officer of Robson, Slone was not an agent for the purposes of General Obligations Law § 5-703. Accordingly, written authorization was not required for an agreement signed by that officer to be binding upon the corporation."); *Flax v. B. M. Dev. Corp.*, 35 A.D.2d 565, 565, 313 N.Y.S.2d 591, 592 (2d Dep't 1970) (corporation president "was not an agent with respect to the Statute of Frauds' requirement that the agent be authorized in writing" to sell real property).

"The reason for this 'exception' to the requirement of written authority is that, since a corporation cannot act for itself, the acts of the corporate officers on behalf of the corporation are deemed to be the acts of the corporation itself. Thus, an agreement signed by a corporate officer is, for the purposes of § 5-703(2), 'in writing subscribed by the party to be charged.'" *Cinema North Corp.*, 867 F.2d at 140. The same rationale applies to government entities, which, like corporations, cannot act on their own behalf. Just as a corporation acts through its officers, a foreign country acts through its ranking government officials and senior statesmen. Accordingly, an agreement singed by an appropriate government official must be, "for the purposes of § 5-703(2), 'in writing subscribed by the party to be charged.'" *Id.*

B.  Benin Acknowledges the Validity of Other Conveyances of Its
    Real Property By Beninese Officials Without Written Authorization

While Benin now urges that the rationale applied in cases such as *Cinema North Corp.* should not be applied to situations involving foreign governments, Benin's prior conduct

6

undermines its position.[3] For example, in the Second Am. Compl., Benin holds out its January 16, 2004, sale of its former Mission Office Building located at 4 East 73rd Street in New York (the "73rd Street Sale") as an exemplary sale of Beninese property in New York, where all of the "procedures meant to ensure legitimacy and avoid fraud and official corruption, including procuring Benin Government's authorizations . . . were duly obtained and/or followed." Defs. 56.1, ¶ 38 (emphasis added). Benin's position regarding the 73rd Street Sale was reinforced at the August 20, 2009, deposition of Jean-Francis Zinsou ("Zinsou"), plaintiff's designated Rule 30(b)(6) witness, when Zinsou responded in the affirmative when asked whether the Republic of Benin considered that sale a "valid transfer[]." Defs. 56.1, ¶ 38. Thus, Benin asserts that the 73rd Street Sale met all applicable standards for real estate transactions involving foreign governments.

Benin conveniently neglects to mention, however, that in the 73rd Street Sale, just as in the transaction at bar, the Beninese representative who signed the deed (there, Adechi) did not produce any written authorization. As set forth in the accompanying Aheri Aff., M. Nader Aheri, the attorney for the purchaser in the 73rd Street Sale, avers that neither Adechi nor counsel for Benin (there, Eisenberg, Tanchum, & Levy [*see* Finkelstein Aff., Ex. C]) "ever indicated that there was a need for a writing executed by any Beninese governmental entity authorizing Mr.

---

[3] In a footnote, Benin cites to *121-129 Broadway Realty, Inc. v. City of Schenectady*, 17 A.D.2d 1016, 1017, 233 N.Y.S.2d 963, 965 (3d Dep't 1962). There, a "City Manager" tendered an offer for the purchase of land as part of the exercise of Schenactady's eminent domain powers, 17 A.D.2d at 1016, 233 N.Y.S.2d at 964, without the passage of the requisite city ordinance. The transaction was thus much more than a simple sale or acquisition, as it involved Constitutional taking powers. Moreover, the governmental representative involved there was a "City Manager." It is entirely unclear what a "City Manager's" duties and responsibilities entail. Thus, a comparison of the need for a written authorization in that case and in this case, where we have involved the Director of Administration, United Nations Ambassador, and the Foreign Minister, is entirely misplaced. Nothing in the decision permits plaintiff's impermissibly broad expansion of the holding from a Schenactady "City Manager" to all government officials worldwide under any circumstances.

7

Adechi to enter into the transaction on Benin's behalf and they did not provide any such writing." Defs. 56.1, ¶ 40.

Moreover, Shimoff and Mezei demanded – and at a June 12, 2009, pretrial conference, Magistrate Judge Michael Dolinger directed – that Benin produce all written authorization with respect to the 73rd Street Sale. (June 12, 2009, Hearing Transcript, relevant portions of which are attached as Ex. I to the Finkelstein Aff., at 24:14–25:18.) Benin produced no such written authorization. Defendants are thus permitted to infer that no such authorization exists.

As a further example of Benin's acknowledgement that written authorization is not necessary for certain representatives of a foreign government to enter into transactions involving real property, at his deposition, Zinsou testified that authority to enter into leases for real property in New York lies with the Beninese Mission official holding the position of "Chief of Chancellery." Defs. 56.1, ¶ 42. However, Zinsou further testified that the Chief of Chancellery does not need written authorization to execute lease agreements, including leases with terms in excess of one year, a requirement imposed by N.Y. Gen. Oblig. L. § 5-703(1) on those acting as "agents." *Id.*, ¶ 43. One such lease executed by a Beninese Chief of Chancellery pertains to the two-year lease for Zinsou's Manhattan apartment. *Id.* Thus, at his deposition on behalf of Benin, Zinsou confirms that the rationale in *Cinema North Corp.* does apply to high-ranking representatives of foreign governments as it applies to officers and directors of corporations, and that the Chief of Chancellery is not considered an "agent" required to have written authorization under New York's Statute of Frauds. *See* N.Y. Gen. Oblig. L. § 5-703(1) (requiring written authorization for the lease of real property exceeding a term of one year).

Since no written authorization for the 73rd Street Sale was necessary and since Benin recognizes that its Chief of Chancellery does not require a power of attorney or other written

8

authorization to bind the Beninese government to a lease exceeding one year, Benin's position that written authorization is always necessary for a representative of a foreign government to execute documents involving interests in real property is disingenuous.

Thus, the only question remaining is not whether every government official requires a power of attorney or written authorization before entering into transactions in real property on behalf of the foreign government, but rather which government officials require such writing and which government officials do not. The latter is a question of authority, and, for the reasons stated in Point III, *infra*, Guedegbe was one such official who did not require written authorization. The cases cited by Benin are entirely irrelevant to that issue since those cases concern, for example, the ability of a secular or religious corporation's regular and/or former employees to bind the corporation without written authorization[4] and the ability of individuals to bind other individuals without written authorization[5] Neither of these situations has any bearing

---

[4] *See* Pl. Mem. at 9 (citing *Commission on Ecumenical Mission and Relations of United Presbyterian Church in U. S. of America v. Roger Gray, Ltd.,* 27 N.Y.2d 457, 464, 318 N.Y.S.2d 726, 731 (1971) (invalidating lease signed by then-managing agent of corporation without written authorization because he held "an accordion title" and was "not a corporate officer"); *Urgo v. Patel,* 297 A.D.2d 376, 377-378, 746 N.Y.S.2d 733, 735 (2d Dep't 2002) (neither former owner of property nor agent of former owner had authorization to bind LLC currently owning property, with whom neither had a connection, to sale agreement); *Diocese of Buffalo v. McCarthy,* 91 A.D.2d 1210, 218, 458 N.Y.S.2d 764, 767 (4th Dep't 1983) (invalidating lease of property belonging to the Diocese of Buffalo because local parish priest could not bind the Diocese without written authorization).

[5] *See* Pl. Mem. at 9 (citing *Leist v. Tugendhaft,* 64 A.D.3d 687, 688, 882 N.Y.S.2d 521, 523 (2d Dep't 2009) (noting in case where defendants' attorney had merely sent plaintiff sales contract that the agent could not have bound defendants without a writing); *Nesbitt v. Penalver,* 40 A.D.3d 596, 599, 835 N.Y.S.2d 426, 429 (2d Dep't 2007) (even if a complete and enforceable contract for the sale of property had existed, attorney had no written authority to bind client); *Chan v. Bay Ridge Park Hill Realty Co.,* 213 A.D.2d 467, 468, 623 N.Y.S.2d 896, 897 (2d Dep't 1995) (invalidating conveyance signed by brother without written authorization of other brother and property co-owner); *DeMartin v. Farina,* 205 A.D.2d 659, 660, 613 N.Y.S.2d 655, 656 (2d Dep't 1994) (even if there had been a "meeting of the minds," contract to sell real property unenforceable where attorney had no written authority to bind client); *Fortes v. Estate of Magoon,* 160 A.D.2d 756, 756, 553 N.Y.S.2d 475, 477 (2d Dep't 1990) (invalidating lease signed by brother without written authorization of other brother and property co-owner); *Robbins v. Kearing,* 66 N.Y.S.2d 537, 540 (Sup. Ct. Broome Co. 1946) (voiding lease signed by sister without written authorization of other sister and property co-owner). Plaintiff also cites to *Burns v. McCormick,* 233 N.Y. 230, 234-235, 135 N.E. 273, 274 (1922), which concerns an oral bequest and does not even involve an agency issue.

9

on the issue of whether a high-ranking government official, with his authority confirmed by the

country's United Nations Ambassador and the country's Foreign Minister, has the authority to

execute a deed on behalf of his government. [6]

## II.

### EVEN IF GUEDEGBE REQUIRED WRITTEN AUTHORIZATION, THE SALE OF THE LOT TO SHIMOFF IS NEVERTHELESS VALID

As established herein, Guedegbe, like an officer or director of a corporation, did not

require written authorization to execute Deed I on behalf of Benin. However, even assuming,

*arguendo*, that he did require written authority, the sale of the Lot to Shimoff is nevertheless

valid under N.Y. Gen. Oblig. L. § 5-703(4) and the doctrine of equitable estoppel.

A.    N.Y. Gen. Oblig. L. § 5-703(4)

N.Y. Gen. Oblig. L. § 5-703(4) provides that "[n]othing contained in this section abridges

the powers of courts of equity to compel the specific performance of agreements in cases of part

performance." The party seeking to invoke N.Y. Gen. Oblig. L. § 5-703(4), must demonstrate "

that the acts constituting partial performance are 'unequivocally referable'" to the agreement

between the parties. Curanaj v. Sec. Pac. Nat'l Bank, 202 A.D.2d 856, 857, 609 N.Y.S.2d 358,

358-59 (3d Dep't 1994).

Here, there can be no dispute that <u>at the very least</u> , the parties <u>partly</u> performed. [7]

Shimoff paid $650,000 to purchase of the Lot. Defs. 56.1, ¶ 31. While payment of consideration

alone is insufficient to constitute partial performance, "other acts, such as possession or

---

[6] Plaintiff also cites to *Bergman v. Krausz*, 19 A.D.3d 186, 187, 796 N.Y.S.2d 360, 361 (1st Dep't 2005), where the identity of the entity executing the conveyance and the entities that it purported to bind by so doing were not noted. Pl. Mem., p. 9.

[7] In fact, the parties completed performance since Shimoff paid the purchase price and the Lot was conveyed to her. Defs. 56.1, ¶¶ 29, 31, 32.

10

improvements, when combined with the payment . . ., may be sufficient." *Club Chain of Manhattan, Ltd. v. Christopher & Seventh Gourmet, Ltd.*, 74 A.D.2d 277, 283, 427 N.Y.S.2d 627, 630 (1st Dep't 1980). Here, such "other acts" are obvious: Shimoff not only paid the purchase price at the closing, but she also took possession of the Lot and held it for more than one year. Defs. 56.1, ¶¶ 13, 28, 29. After possessing the Lot for more than one year, Shimoff sold it to Mezei. Defs. 56.1, ¶ 34. Under these circumstances, where there is payment in full of the contract price, plus additional acts such as taking of possession, New York courts hold under N.Y. Gen. Oblig. L. §5-703(4) that such conduct is sufficient to sustain a transaction which could otherwise be void under the statute of frauds. *Club Chain*, 74 A.D.2d at 283, 427 N.Y.S.2d at 630; *Mott v. Devine*, 102 A.D.2d 946, 947, 477 N.Y.S.2d 811, 812 (3d Dep't 1984) (holding that plaintiff's actions, including payment in full of the contract price and taking possession of the property are "unequivocally referable to the oral contract and constitute part performance, thus taking the oral agreement out of the Statute of Fraud's reach"); *see also Pinkava v. Yurkiw*, 64 A.D.3d 690, 692, 882 N.Y.S.2d 687, 689 (2d Dep't 2009). Thus, even if it is determined that Guedegbe required written authorization to execute Deed I on behalf of Benin (which, defendants urge, he did not), since there was at least partial performance of the contract, under N.Y. Gen. Oblig. L. § 5-703(4), the transaction must be deemed valid.

B.   Equitable Estoppel

Again, assuming, *arguendo*, that Guedegbe required written authorization under N.Y. Gen. Oblig. L. § 5-703(2), plaintiff is also barred from voiding the transaction under the doctrine of equitable estoppel. The doctrine of equitable estoppel "'requires three elements on the part o f the party estopped: (1) conduct which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2)

11

intent that such conduct (representation) will be acted upon; and (3) knowledge, actual or constructive, of the true facts.'" *Health-Loom Corp. v. Soho Plaza Corp.*, 272 A.D.2d 179, 181, 709 N.Y.S.2d 165, 167 (1st Dep't 2000) (quoting *Holm v. C.M.P. Sheet Metal Inc.*, 89 A.D.2d 229, 234-35, 455 N.Y.S.2d 429, 433 (4th Dep't 1982).

As set forth in detail in Point III, below, Benin cloaked Guedegbe with apparent authority on which Shimoff relied in entering into the transaction and paying $650,000 for the Lot. Various Beninese officials, including the United Nations Ambassador and the Foreign Minister, had actual knowledge of the true facts and of Shimoff's reliance on the facts as they appeared. Defs. 56.1, ¶¶ 7, 9 10, 11, 13, 16, 17, 21, 26, 30. Accordingly, under the doctrine of equitable estoppel, the Benin to Shimoff transaction must stand even if Guedegbe otherwise required written authorization to execute Deed I.

## III.

### GUEDEGBE HAD ACTUAL AND APPARENT AUTHORITY TO EXECUTE THE DEED ON BEHALF OF BENIN

Benin claims that even if Guedegbe did not require written authorization to convey the Lot under the Statute of Frauds, Deed I must still be nullified because Guedegbe lacked authority to execute it on Plaintiff's behalf. This is incorrect. The evidence establishes as a matter of law that Guedegbe had both actual and apparent authority to execute Deed I. Accordingly, summary judgment in favor of Shimoff and Mezei is warranted.

12

## A.   Guedegbe Had Actual Authority to Execute Deed I

Under New York law, [8] an agent may have actual or apparent authority to perform

an action.  Actual authority "is the result of the principal's consent manifested to the agent."

*C.E. Towers Co. v. Trinidad and Tobago (BWIA Int'l) Airways Corp.*, 903 F. Supp. 515, 523

(S.D.N.Y 1995) (senior officer of foreign airline had actual and apparent authority to bind airline

to lease extension).  *See also King World Prod. v. Fin. News Network*, 660 F. Supp. 1381, 1382-

84 (S.D.N.Y. 1987), *aff'd*, 834 F.2d 267 (2d Cir. 1988) (senior officer had actual if not apparent

authority to execute lease).

Actual authority, whether express or implied from "'the parties' words and conduct as

construed in light of the surrounding circumstances," *Cromer Fin. Ltd. v. Berger*, 245 F. Supp.2d

552, 560 (S.D.N.Y. 2003) (quoting *Riverside Research Inst. v. KMGA, Inc., 108 A.D.2d 365,*

*370, 489 N.Y.S.2d 220*, 223 (1st Dep't 1985), *aff'd*, 68 N.Y.2d 689, 506 N.Y.S.2d 302 (1986),

exists "'where the agent may reasonably infer from the words or conduct of the principal that the

principal has consented to the agent's performance of a particular act.'"  RLI Ins. Co. v. Athan

---

[8] Plaintiff argues that under New York choice of law rules, the Court should rely on Beninese law on issues of actual authority while applying New York law on issues of apparent authority.  Pl. Mem p. 7.  Initially, Defendants note that when denying Plaintiff's First Motion, the Court held that the issue of the validity of Deed I is governed by New York law.  *Republic of Benin*, 483 F. Supp. 2d at 316, n.5 .  Moreover, in making this argument now, Plaintiff attempts to distinguish the Second Circuit's application of New York law in determining issues of authority of a foreign diplomat. *First Fidelity Bank v. Gov't of Antigua and Barbados Permanent Mission*, 877 F.2d 189, 194 n. 3 (2d Cir 1989).  In any event, if there is a conflict between Beninese law and New York law on the issue of Guedegbe's actual authority, New York's choice of law rules require "application of an 'interests analysis.'" *Karaha Bodas Co. v. Perushaan Pertambangan Minyak Dan Gas Bumi Negra*, 313 F.3d 70, 85 (2d Cir. 2002).  The most significant facts and contacts in an interest analysis are those which relate to the purpose of the rule. *Id.*  Here, the Lot is located in New York. Both Shimoff and Mezei live in New York. The contracts and sales were entered into in New York. Finally, unlike the cases cited by Plaintiff on this point, here, the foreign government (Benin) has affirmatively sought relief in New York.  In the cases cited by Plaintiff, the foreign government was sued as a defendant in New York, thus the foreign government did not choose to subject itself to New York law. Accordingly, the "interests" analysis requires application of New York law. *See Koreag, Controle et Revision v. Refco F/X Assoc., Inc.*, 961 F.2d 341, 350 (2d Cir. 1992) cert denied, 506 U.S. 865, 113 S.Ct. 188 (1992) (applying New York law in action by liquidator appointed in Swiss insolvency proceeding against New York creditor).  In any event, under both New York law and Beninese law (as it is interpreted by Plaintiff), the authority of Guedegbe is established.

13

Contracting Corp., 06-CV-05821 (RRM) (MDG), 2009 U.S. Dist. LEXIS 92402, at *13 (E.D.N.Y. 2009) (quoting *Minskoff v. American Express Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996) (emphasis in original).

That Guedegbe had implied actual authority is evident. An agent has implied actual authority to enter into a transaction when the principal, by its acts, reasonably gives the appearance of authority to the agent. *C.E. Towers Co.*, 903 F. Supp. at 523 (citing *Greene v. Hellman*, 51 N.Y.2d 197, 204, 433 N.Y.S.2d 75, 80 [1980]). Implied actual authority is a "'kind of authority arising solely from the designation of the principal of a kind of agent who ordinarily possesses certain powers.'" *King World*, 660 F. Supp. at 1383 (quoting *Lind v. Schenley Indus. Inc.*, 278 F.2d 79, 85 (3d Cir. 1960).

Here, it is undisputed that when Guedegbe signed Deed I, he was the Director of Administration of Plaintiff's Ministry of Foreign Affairs. Defs. 56.1, ¶ 30. While Plaintiff concedes that the Lot could be conveyed by its Foreign Minister or United Nations Ambassador (Pl. Mem., p. 16), Plaintiff urges that Guedegbe did not have the authority to act. But that is simply inaccurate under New York law and, pursuant to the testimony of Plaintiff's purported expert on Beninese law, Professor Theodore Holo ( "Holo"), under Beninese law.

At his deposition, Holo was questioned about the authority of the Beninese Ambassador to the United Nations. Holo testified that the Ambassador could execute a deed on behalf of Benin or delegate the authority to sign to another Beninese official. Defs. 56.1, ¶ 49; Holo Tr., 82:18-85:11. Holo testified that there are circumstances, including for example when the Ambassador is out of the country, in which the Ambassador could delegate to another official the authority to execute transfer documents on Benin's behalf. *Id.* Holo also testified that in such a situation, the Beninese Foreign Minister would have "to be informed and it's up to him to make

14

the decision." *Id.* at 85:10-11. Thus, Benin's own alleged expert has acknowledged that the authority to execute a deed on behalf of Benin can be bestowed upon an individual by Benin's United Nations Ambassador with the approval of Benin's Foreign Minister. Defs. 56.1, ¶ 49.

The individuals identified by Holo as having the decision making power to delegate authority to another official to execute a deed on behalf of Benin – here Adechi and Biaou – are the precise individuals that acknowledged Guedegbe's authority to execute Deed I. Guedegbe and Adechi – Benin's United Nations Ambassador at the time of the conveyance – met with Shimoff and Selechnik at Benin's consulate to discuss the sale of the Lot. Defs. 56.1, ¶¶ 9, 10, 11. Guedegbe and Adechi negotiated the sale price of the Lot to Shimoff. Defs. 56.1, ¶¶ 12, 13. During their meeting and negotiations, Adechi informed Shimoff and Selechnik that Guedegbe "was authorized to sign the deed for Benin." Defs. 56.1, ¶ 16. Moreover, Koller, who represented Plaintiff at the closing for Deed I, [9] testified that he met with Biaou, Benin's Foreign Minister, on at least three occasions regarding the conveyance of the Property to Shimoff. Defs. 56.1, ¶ 17. During these meetings, Biaou told Koller that Guedegbe had full authority to execute Deed I and transfer the Property from Plaintiff to Shimoff. *Id.*

Based on the foregoing, and in light of Holo's testimony, it can "fairly be said" that Guedegbe was vested "with actual authority implicitly given by the principal to the agent." *King*

___

[9] Benin now disputes that Koller acted as its lawyer. Pl. Mem., p. 11. In support of this statement, Benin submits the declaration of Zinsou ("Zinsou Decl."). September 30, 2009, Declaration of Michael Atadika ("Atadika Decl."), Ex. A-5. In his declaration, Zinsou suggests that he "knew all of the attorneys who were authorized to represent The Mission of Benin to the United Nations in the United States as part of [his] duties as the principal legal officer at the Mission." Zinsou Decl. ¶ 15. But Zinsou 's deposition testimony proves to the contrary, as he could not identify the lawyer that represented Benin in the 73rd Street Sale, a transaction that Benin touts as being the example of how a transaction involving Beninese property should be conducted. Zinsou Tr., p. 229:14-20. Clearly, Benin's claim is disingenuous. The insincerity is buttressed by a review of Benin's Second Am. Compl, where Benin acknowledges that Koller represented Benin at the closing of the sale of the Lot. Second Am. Compl., ¶ 51 ("Defendant Koller also had a duty to disclose to Benin the material facts"), ¶ 52 (" Benin reasonably and justifiably relied upon Mr. Koller to make accurate and truthful representations). In addition, Lynn Bader, an architect who performed work for Benin testified that "Koller represented the Mission" and that Koller "provided advice to the ambassador." Defs. 56.1, ¶ 48.

15

*World*, 660 F. Supp. at 1385. Indeed, it "is not a wild stretch of the imagination to believe" that the Director of Administration of Plaintiff's Ministry of Foreign Affairs, who negotiated the sale of the Lot with the United Nations Ambassador and who signed Deed I with the approval of the Foreign Minister and the United Nations Ambassador, had the authority to do so. *See C.E. Towers Co.*, 903 F. Supp. at 523 (company bound to lease signed by person in charge of North American operations who negotiated it).

In fact, Plaintiff has failed to produce any concrete evidence that Guedegbe even lacked express actual authority to execute Deed I. While Plaintiff claims that Guedegbe lacked such authority because "there is no document from Benin authorizing the sale of the Lot," (Pl. Mem., p. 15), Benin fails to produce any evidence from witnesses with first hand knowledge as to whether such a document ever existed. Since Benin's own alleged expert has acknowledged that due to problems with archiving documents in Africa, simply because a document cannot be located does not mean it never existed (Defs. 56.1, ¶ 1), Plaintiffs' entire conclusion that the document never exists because its current representatives cannot now find it is thus meaningless.
Guedegbe Had Apparent Authority to Execute Deed I

Even if it is assumed that Guedegbe did not have actual authority (express or implied), the evidence establishes that Guedegbe had apparent authority to sign Deed I:  apparent authority is the application of the doctrine of estoppel. It arises when a principal places an agent in a position where it appears that the agent has certain powers which he may or may not possess.  If a third person holds the reasonable belief that the agent was acting within the scope of his authority and changes his position in reliance on the agent's act, the principal is estopped to deny that the agent's act was not authorized.

*King World*, 660 F. Supp. at 1385 (citing *Lind*, 278 F.2d at 85, quoted in *Masuda v. Kawasaki Dockyard Co.*, 328 F.2d 662, 664-65 (2d Cir. 1964); *Hallock v. State of New York*, 64 N.Y.2d 224, 231, 485 N.Y.S.2d 510, 513 (1984).

In this case, the evidence justifies Shimoff's reasonable belief that Guedegbe had authority to sign Deed I. First, Plaintiff concedes that the Lot could be conveyed by, among others, Adechi, its United Nations Ambassador. Pl. Mem., p. 16. That is precisely with whom – along with Guedegbe – Shimoff and Selechnik met at the Beninese consulate and with whom – along with Guedegbe – Selechnik, on Shimoff's behalf, negotiated the purchase of the Lot. Defs. 56.1, ¶¶ 12, 13. Moreover, Adechi informed Shimoff and Selechnik that "Guedegbe was authorized to sign the deed for Benin." Defs. 56.1, ¶ 16.

In addition, Koller, who represented Plaintiff at the closing for Deed I, testified that he met with Biaou, Benin's Foreign Minister, on at least three occasions. Defs. 56.1, ¶ 17. During these meetings, Biaou told Koller that Guedegbe had full authority to execute Deed I and transfer the Property from Plaintiff to Shimoff, further evidencing the apparent authority of Guedegbe. Defs. 56.1, ¶ 17.

Interestingly, Plaintiff has not produced Biaou, Adechi, or Guedegbe, the three key players in the sale of the Lot to Shimoff, to testify on Benin's behalf. Since these are the three central figures with personal knowledge of the transaction, Plaintiff's failure to submit testimony by any of these three people leads to the inference that their truthful testimony would be adverse to Plaintiff's position. *King World*, 606 F. Supp. at 1386 (*citing Karavaos Compania Naviera v. Atlantica Export Co.* 588 F.2d 1, 9-10 (2d Cir. 1978)); *Felice v. Long Island R.R. Co.*, 426 F.2d 192, 194-95 (2d Cir. 1970), *cert denied*, 400 U.S. 820, 91 S. Ct. 37 (1970)).

17

### 1. Defendants Had No Duty of Inquiry

When dealing with apparent authority, the duty of inquiry arises when a "situation creates circumstances which would lead a reasonable third party to believe that an investigation would be necessary." *C.E. Towers Co.* 903 F. Supp. at 524. Only if a "transaction is extraordinary or so novel that it should alert the third party to the danger of fraud" is there "an additional duty to inquire into the agent's authority." Indeed, if this were not the standard, the "duty of inquiry would nullify the doctrine of apparent authority in almost every case." *Id.* (citing *Herbert Const. Co. v. Cont'l Ins. Co.*, 931 F.2d 989, 996 (2d Cir. 1991)).

The duty of inquiry is really just another way of asking whether the third party reasonably relied on the authority of the agent. *C.E. Towers Co.*, 903 F. Supp. at 525. In this case, given Guedegbe's official position, his role in the negotiation process, and the involvement of the United Nations Ambassador and Foreign Minister, it was more than reasonable to rely on his authority to sign Deed I. If a principal 's words and conduct make it reasonable to believe that the agent has authority to enter into a transaction, the third party relying on that reasonable belief need not inquire further into actual authority. *King World*, 660 F. Supp. at 1385.

Here, Plaintiff urges that Defendants had actual notice of Guedegbe' s alleged lack of authority and had a duty to inquire as to the scope of his actual authority. But Plaintiff's entire argument that Shimoff's reliance was unreasonable is based on the te stimony of Barry Chasky ("Chasky"), the title insurance agent who closed the Deed I transaction. [10] Plaintiff's reliance on this testimony is entirely overstated and, in any event, misplaced.

---

[10] Benin states that Chasky, on behalf of Triad Abstract, acted at the closing as the agent of Shimoff. Pl. Mem., p. 5. Benin is wrong. It is well settled that acts typically performed by title abstract companies, such as the searching of title, are performed for the benefit of the title insurer, not the insured. *Citibank, N.A., v. Chicago Title Ins. Co.*, 214 A.D.2d 212, 219, 632 N.Y.S.2d 779, 783 (1st Dep't 1995); *Zev Cohen, LLC v. Fidelity Nat'l Title Ins. Co.*, 831 N.Y.S.2d 689, 694-95 (Sup. Ct. Kings Co. 2007). Accordingly, Chasky was the agent of the title insurer, not the insured. *See e.g. Old Republic Nat'l Title Ins. v. Kaufman*, 1997, 96-cv 04533 (JSM), 1997 U.S. Dist. LEXIS 8002,

18

### 2.    Chasky and the Chasky Letter

Benin makes much of a letter authored by Chasky and signed by Koller at the closing (the "Chasky Letter," attached as Ex. 1 to the Koller Decl.). In the letter, Koller confirmed for Chasky that Biaou (Benin's Foreign Minister, with whom Koller met about the sale from Benin to Shimoff on at least three occasions) verified to Koller that Guedegbe had the authority to enter into the transaction on behalf of Benin. Defs. 56.1, ¶ 27; Koller Decl., Ex. 1. Benin now reads into the letter an inference that Biaou told Koller that it was Biaou who authorized Guedegbe to sign Deed I, but that is not what the Chasky Letter says. Rather, the Chasky Letter says simply that Guedegbe "has authority to execute all documents in connection with the sale of the" Lot. *Id.* (emphasis added). Nothing in the Chasky Letter indicates that Biaou was the one who bestowed authority on Guedegbe. To the contrary, the plain meaning of the Chasky Letter is simply that Guedegbe had the authority, not the Biaou had to give it to him.

In any event, Benin ignores one critical fact – of all those present at the closing, Chasky was the only one who had not met and spoken previously (either personally or through those he represented) to Adechi, Biaou, or Guedegbe. Defs. 56.1, ¶¶ 24, 25. Shimoff and Selechnik had met previously with Adechi and Guedegbe and advised Friedman of their discussions. Id., ¶ 22. Adechi confirmed to Shimoff and Selechnik that Guedegbe had authority to execute Deed I. Id., ¶ 16. Koller met previously with Biaou. Id., ¶ 17. Biaou confirmed to Koller that Guedegbe had authority to execute Deed I. Id. Accordingly, other than Chasky, all those appearing at the closing had confirmed before the closing even took place that Guedegbe had the requisite

---

2 (S.D.N.Y. 1997) (recognizing abstract company as agent of title insurance company). Benin also states erroneously that Chasky was the "closing attorney" at the sale of the Lot from Benin to Shimoff. Pl. Mem. 1. Again, Benin is wrong. While at the time of the closing, Chasky was an attorney, he did not act in that capacity at the closing. Chasky merely acted in his role as a principal/employee of the abstract company, an agent of First American.

authority. Since Chasky was new to the transaction, and for his own edification, Chasky asked Koller to sign the Chasky Letter confirming Koller's conversations with Biaou. Id., ¶ 27. With the letter in hand, Chasky, like the others present at the closing, was convinced that all requirements were met, and he proceeded with the closing. Id., ¶ 28. In this regard, Chasky testified to the following:

(a)      when he prepared the initial title report, he thought that only Benin's United Nations Ambassador had authority to convey the lot. Chasky Tr. 25:24-25;

(b)      after he prepared the title report, but before the closing, the underwriter informed him that the Foreign Minister and Counsel could also convey the lot. Chasky Tr. 26, 27, 49, 50;

(c)      when asked if Koller presented a power of attorney at the closing, Chasky responded, "No, why would he?" Chasky Tr. 38; and

(d)      Chasky drafted the letter at the closing because it was "what he needed to close" and it contained the "language" that he "was comfortable with to close," Chasky Tr. 68.

Plaintiff's suggestion that, at the closing, a major fracas broke out regarding Guedegbe's authority is simply not true, nor is it consistent with the testimony of Friedman and Selechnik, who were also present at the closing and confirm there were no problems. Defs. 56.1, ¶ 32. As Friedman explains in his affidavit, letters such as the Chasky Letter are commonly prepared at a closing. Friedman Aff., ¶ 9. Thus the Chasky Letter raised no issue at the closing. The fact is that Chasky was comfortable closing the transaction. If he had been as alarmed as Plaintiff suggests, he would not have allowed the transaction to close.

In any event, even if the Chasky Letter would have raised a legitimate question of Guedegbe's authority triggering further inquiry by Shimoff or her representatives, any such

20

inquiry would have to have been directed to Benin's United Nations Ambassador and/or its Foreign Minister, both of whom did and would again confirm that Guedegbe had authority. Moreover, Plaintiff apparently suggests that a potential purchaser would have been required to research Beninese law and Beninese jurisprudence to confirm Guedegbe's authority. Certainly, that is not the case.

## IV.

### PLAINTIFF'S CLAIMS ARE BARRED BY THE TWO INNOCENTS DOCTRINE

Plaintiff's motion must also be denied because Plaintiff's claims are equitably barred under the "two innocents" doctrine. It is a well-settled principle of equitable estoppel that "'where one of two innocent persons or [innocents] must suffer by the acts of a third, he who has enabled such third person to occasion the loss, must sustain it." *Bunge Corp. v. Mfr. Hanover Trust Co.*, 31 N.Y.2d 223, 229, 335 N.Y.S.2d 412, 416 (1972) (quoting *National Safe Deposit, Savings & Trust Co. v. Hibbs*, 299 U.S. 391, 394, 33 S. Ct. 818, 819 [1913]). *See also Meyerson v. Lawyers Title Ins. Co.*, 39 A.D.2d 190, 193-94, 333 N.Y.S.2d 33, 34-35 (1st Dep't 1972), *aff'd*, 33 N.Y.2d 704, 349 N.Y.S.2d 675 (1973) (party cloaking agent with apparent authority should bear the loss).

Plaintiff makes no credible allegation to support a claim that Shimoff and Mezei are anything but good faith purchasers for value. Accordingly, even if Plaintiff's allegations concerning the alleged fraud of Guedegbe, Biaou, and Adechi are assumed to be true (*see* Second Am. Compl., ¶31), Plaintiff, not Shimoff and Mezei, could and should have been able to prevent the alleged fraud by its own officials. Accordingly, as between Plaintiff and Defendants, Plaintiff, not Defendants, should bear the loss caused by the alleged fraud of its own officials.

21

While Plaintiff misguidedly points to the absence of a document filed pursuant to N.Y.

Real Prop. L. § 331 granting Guedegbe authority to convey Beninese property in an attempt to

show that such authority did not exist (Pl. Mem., p. 25), N.Y. Real Prop. L. § 331 actually

highlights another manner in which Plaintiff failed to act to prevent fraud of its own officials.

N.Y. Real Prop. L. § 331 provides:

> A copy of a law of a foreign country or of a decree of the executive
> power of such a country, appointing an agent or attorney with
> power to execute and deliver in the name or on behalf of such
> foreign country, any instrument in writing granting, assigning,
> surrendering or in any manner affecting any estate or interest of
> such government in real property within this state . . . or of a law or
> decree revoking such an appointment . . . when certified and
> recorded as hereinafter provided, shall be presumptive evidence of
> the authority of such agent or attorney.

N.Y. Real Prop. L. § 331. Benin has recorded no documentation pursuant to N.Y. Real

Prop. L. § 331. Defs. 56.1, ¶ 4. Had Benin bothered to record such a document, it would have

removed all question regarding who was authorized to transfer its property. By failing to avail

itself of the safeguards offered by N.Y. Real Prop. L. § 331, Plaintiff made the current situation

possible. Again, because Plaintiff failed to take this readily available step to prevent the alleged

fraud by Guedegbe, Biaou, and Adechi, Plaintiff must bear the resulting loss. *Bunge Corp.*, 31

N.Y.2d at 229, 335 N.Y.S. 2d at 416.

## V.

### PLAINTIFF'S CLAIMS ARE BARRED BY N.Y. REAL PROP. L. § 266

Pursuant to N.Y. Real Prop. L. § 266, a bona fide purchaser or encumbrancer for value is

protected in its title "unless it appears that he had previous notice of the fraudulent intent of his

immediate grantor, or of the fraud rendering void the title of such grantor." N.Y. Real Prop. L. §

266; *Karan v. Hoskins* , 22 A.D.3d 638, 638, 803 N.Y.S.2d 666, 667 (2d Dep't 2005). While

N.Y. Real Prop. L. § 266 does not apply to deeds that are void (such as by way of forgery), it does apply "to fraud situations that are voidable." *Wu v. Wu,* 288 A.D.2d 104, 105, 733 N.Y.S.2d 45, 46 (1st Dep't 2001). Here, Judge Koeltl has denied Benin's argument that Deed I is void because Guedegbe's signature was allegedly a "forgery." *Republic of Benin,* 483 F. Supp. 2d at 318. As a result, even if Guedegbe and his potential co-conspirators acted fraudulently, such fraudulent acts cannot operate to void the title of Mezei.

Mezei is the current title holder and the last purchaser of the Lot. It is undisputed that she paid $1.25 million for the property. Defs. 56.1, ¶ 35. Mezei had no knowledge of any fraudulent intent earlier in her chain of title, nor does Benin urge in support of its motion that she did. *Id.*, ¶ 36. In fact, Benin provides no evidence of any knowledge – actual or constructive – on Mezei's part of the alleged fraudulent intent of Guedegbe (Benin's Director of Administration, Ministry of Foreign Affairs), Adechi (Benin's United Nations Ambassador), and Biaou (Benin's Foreign Minister), which, according to Benin should render Shimoff's title void. Thus, even if the Court were to find that Guedegbe acted fraudulently, since there has been no showing that Mezei knew of the fraud, her title is protected regardless of any purported fraud by Guedegbe or others by N.Y. Real Prop. L. § 266.

## VI.

### N.Y. REAL PROP. L. § 329 DOES NOT PROVIDE AN INDEPENDENT BASIS FOR CANCELLATION OF THE MEZEI AND SHIMOFF DEEDS

Plaintiff urges that the Deeds "must be canceled and declared void" under N.Y. Real Prop. L. § 329. Pl. Mem., p. 12. N.Y. Real Prop. L. § 329 permits an owner of real property to bring an action to "have any recorded instrument in writing relating to such real property or interest therein . . . declared void or invalid, or to have the same canceled of record as to said real property." But N.Y. Real Prop. L. § 329 merely gives plaintiffs the right to sue to cancel or void

23

the Deeds; it is not in and of itself grounds for voiding or cancelling those deeds. During the

course of the action permitted by N.Y. Real Prop. L. § 329, plaintiff must still set forth a legally

valid justification for the cancellation or voiding of the instrument in question, and as plaintiff

has failed to do so in this case, N.Y. Real Prop. L. § 329 has no application here.

## CONCLUSION

For the foregoing reasons, the cross-motion of defendants Shimoff and Mezei should be

granted and plaintiff's motion should be denied.

Dated: October 30, 2009

TARTER KRINSKY & DROGIN LLP

By: _____

Andrew N. Krinsky (AK-0997)
Edward R. Finkelstein (EF-2805)
Kieran B. Morrow (KM-4259)
Attorneys for defendant Robin Shimoff
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000

- and -

ACKERMAN, LEVINE, CULLEN,
BRICKMAN & LIMMER, LLP

By: _____

Todd Harris Hesekiel (TH-1289)
Attorneys for defendant Beverly Mezei
1010 Northern Boulevard, Suite 400
Great Neck, New York 11021
(516) 829-6900

24