**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————

**REPUBLIC OF BENIN,**

                          **Plaintiff,**                **06 Civ. 870 (JGK)**

             **- against -**                **MEMORANDUM OPINION AND**
                                                   **ORDER**

**BEVERLY MEZEI, ET AL.,**

                         **Defendants.**
————————————————————————

**JOHN G. KOELTL, District Judge:**

    The Republic of Benin (the "plaintiff") brings this action against Beverly Mezei ("Mezei"), Robin Shimoff ("Shimoff"), First American Title Insurance Company of New York, Alfred Koller ("Koller"), and Joel Adechi ("Adechi"), seeking to void two deeds to a parcel of real property located next to the residence of the Ambassador of the Republic of Benin's Mission to the United Nations.  The property is located in the Bronx, New York.  Deed I, signed by Thomas Guedegbe ("Guedegbe"), the former Director of Administration of the Republic of Benin's Ministry of Foreign Affairs, purports to convey the property to Shimoff.  Deed II purports to convey the property from Shimoff to Mezei.  The plaintiff alleges that Guedegbe lacked the proper authority to convey the property as an agent of Benin and that the defendants lack the writing required by the statute of frauds to show Guedegbe had such authority.  The defendants Shimoff and Mezei (the "defendants") respond that Guedegbe is

not an agent for statute of fraud purposes and therefore did not
need written authorization to convey the property.  Moreover,
the defendants argue that Guedegbe had both actual and apparent
authority to convey the property.  The plaintiff moves for
summary judgment pursuant to Federal Rule of Civil Procedure 56
and defendants Mezei and Shimoff cross-move for summary
judgment.


                                  I.


        The standard for granting summary judgment is well
established.  Summary judgment may not be granted unless "the
pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c)(2); see also Celotex
Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v.
Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223
(2d Cir. 1994).  "[T]he trial court's task at the summary
judgment motion stage of the litigation is carefully limited to
discerning whether there are any genuine issues of material fact
to be tried, not to deciding them.  Its duty, in short, is
confined at this point to issue-finding; it does not extend to
issue-resolution."  Gallo, 22 F.3d at 1224.  The moving party

                                  2

bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.  The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Robins v. New York City Bd. of Educ., No. 07 Civ. 3599, 2010 WL 2507047, at *1 (S.D.N.Y. June 21, 2010).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party. Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the burden shifts to the non-moving party to come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party must produce evidence in

the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases); Robins, 2010 WL 2507047, at *1.


## II.

The following facts are undisputed unless otherwise noted.

On October 1, 2004, Deed I was executed between the Republic of Benin by Guedegbe, Benin's Director of Administration, Ministry of Foreign Affairs, and Shimoff. Deed I purports to convey a plot of land located in Bronx County, Block 5821, Lot 2804, to Shimoff. Public records reveal that Shimoff paid $650,000 for the property. A year later, on October 11, 2005, Shimoff executed Deed II with Mezei, purporting to convey the property to Mezei for $1,250,000. See Republic of Benin v. Mezei, 483 F. Supp. 2d 312, 313 (S.D.N.Y. 2007).

The closing of Deed I was attended by Jacob Selechnick (Shimoff's father) and his lawyer Edward Friedman, Barry Chasky ("Chasky"), Koller, and Guedegbe. (Chasky Dep. Ex. 3.) Koller was the attorney for Benin, and Chasky was the closing attorney for First American Title Insurance. (Chasky Dep. 6.) Chasky

4

was aware at the closing that the only officials who could convey title on behalf of Benin were the Benin Ambassador, the Foreign Minister of Benin, and its Consul, and that none of these officials were present.  (Chasky Dep. 51-52.)

It is undisputed that no document granting Guedegbe authority to enter into the transaction was recorded with the county clerk or register pursuant to New York Real Property Law § 331.[1]  Benin, 483 F. Supp. 2d at 314.  Moreover, it is undisputed that no such writing has been produced, and while the defendants argue that archiving of documents in Africa is sometimes incomplete, no party affirmatively argues that such a writing exists.  (Pl. Benin's Statement of Material Undisputed Facts ("Pl.'s 56.1 Stmt.") ¶ 1, Oct. 14, 2009; Defs.' Counterstatement Pursuant to Local Rule 56.1 ("Defs.' 56.1 Stmt.") ¶ 1, Oct. 30, 2009.)

Under these circumstances, Chasky was aware of the need for a writing to confirm that the property was conveyed by the proper Benin authorities.  (Chasky Dep. 66-68.)  Therefore, Koller signed a handwritten letter drafted by Chasky indicating that Guedegbe had authority to convey the property and that Koller would later forward a letter from the Foreign Minister

---

[1] The Code provides a formal mechanism for the recording of laws and decrees of foreign countries' appointing agents and attorneys and provides that such records are presumptive evidence of the authority of such agents or attorneys. N.Y. Real Prop. Law § 331.

confirming that authority.  (Chasky Dep. Ex. 9.)  The body of
the letter reads:

> This is to advise that the Foreign Minister
> of the Republic of Benin has told me the
> [sic] Thomas Guedegbe, Director of
> Administration, Ministry of Foreign Affairs
> of said Republic, has authority to execute
> all documents in connection with the sale of
> the above premises to Robin Shimoff on this
> date.  I shall forward a letter to this
> effect from the Foreign Minister.

(Chasky Dep. Ex. 9, "The Chasky Letter.")  It is undisputed that
no such letter was ever forwarded or produced.  (Pl.'s 56.1
Stmt. ¶ 1, Oct. 14, 2009; Defs.' 56.1 Stmt. ¶ 1, Oct. 30, 2009.)

    Shimoff claims, for the first time on this motion, that she
and her father negotiated the terms of the sale with Guedegbe
and Adechi, Benin's Ambassador to the United Nations.  (Defs.'
56.1 Stmt. ¶¶ 5-13.)  Koller asserts that he had discussions
with Rogatien Biaou ("Biaou"), the Foreign Minister of Benin,
that confirmed the authority of Guedegbe to enter into the
transaction.  (Defs.' 56.1 Stmt. ¶ 17.)

    Benin represents that it was not aware of the alleged sale
of the property until November 2005 when Mezei built a fence on
the property.  (Pl.'s Br. 5, Sept. 30, 2009; see also Zinsou
Decl. ¶ 13.)   The plaintiff subsequently brought this action
seeking to void Deeds I and II.

    The plaintiff has previously moved for summary judgment,
arguing that Deed I was forged and that the conveyance of Deed I

6

was invalid under the Foreign Missions Act, 22 U.S.C. §§ 4301-16.  Benin, 483 F. Supp. 2d at 313.  The Court denied the motion, finding that factual disputes existed regarding whether the deed was forged and that the Foreign Missions Act did not render the deed void.  Id. at 319.

The plaintiff now moves for summary judgment arguing that Deed I is void because the statute of frauds and the equal dignities rule would require that any conveyance by Guedegbe include a written formal authorization for Guedegbe to transfer the property, and that no such formal authorization has been produced or alleged to exist.  Moreover, the plaintiff argues that an agent's actions on behalf of a sovereign government require actual, not merely apparent, authority and, in any event, Guedegbe had neither actual nor apparent authority to convey the property.

The defendants oppose the motion and cross-move for summary judgment, arguing that no written authorization was required for Guedegbe to transfer the property because as a high government official, Guedegbe was not merely an agent of the plaintiff.  Moreover, the defendants argue that Guedegbe had both actual and apparent authority to convey the property and that Benin's claims are barred by the two innocents doctrine.

7

III.

Benin argues first that Deed I is void because there was no written authorization for Guedegbe to enter into the transaction.  The New York statute of frauds provides that "[a] contract . . . for the sale[] of any real property, or an interest therein, is void unless the contract or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the party to be charged, or by his lawful agent thereunto authorized by writing."  N.Y. Gen. Oblig. Law § 5-703(2).  When the sale is conducted by an agent of the party to be charged, written authorization for the agent to enter into the transaction is required.  See, e.g., In re Cohen, 422 B.R. 350, 366 (E.D.N.Y. 2010) (New York statute of frauds "requires that when a lease for a period greater than one year [or for the sale, of any real property,] is subscribed by a lawful agent on behalf of his principal, the agent's authorization to enter into the agreement must be in writing.") (alteration in original) (quoting Diocese of Buffalo v. McCarthy, 458 N.Y.S.2d 764, 767-68 (App. Div. 1983)); Bowling v. Pedzik, 754 N.Y.S.2d 653, 654 (App. Div. 2003) (affirming dismissal of complaint when written contract for sale of real property executed by agent did not "contain a sufficient expression of an intent to confer authority" and did not "confer authority to execute the very

8

contract which the agent undertakes to execute"); G.G.F. Props., LLC v. Yu Mi Hong, 726 N.Y.S.2d 454, 455 (App. Div. 2001) (finding contract for sale of land unenforceable when agent had oral but not written authority to enter into the contract).  The requirement of written authorization for the agent applies whether the alleged basis for the agent's authority is actual or apparent.  In re Cohen, 422 B.R. at 366.  It is undisputed that no written authorization for Guedegbe to enter into the contract on behalf of Benin has been produced.

The defendants argue that no written authorization is required because Guedegbe was not acting as Benin's agent under the statute of frauds.  The defendants point to a line of cases in which high level corporate officers were not considered agents of the corporation for statute of fraud purposes, and therefore did not need written authorization to enter into a contract for the sale of real property on behalf of the corporation.  See, e.g., Cinema N. Corp. v. Plaza at Latham Assocs., 867 F.2d 135, 140 (2d Cir. 1989) ("A corporate officer, however, is not an 'agent' within the meaning of [N.Y. Gen. Oblig. Law § 5-703(2)] and written authorization is not required for an agreement signed by an officer to be binding on the corporation.") (citation omitted); Sign Up USA, Inc., v. JCF Assocs., LLC, 823 N.Y.S.2d 449, 451 (App. Div. 2006) (collecting cases).  The reason behind this exception is that, because "a

corporation cannot act for itself, the acts of the corporate officers on behalf of the corporation are deemed to be the acts of the corporation itself." Cinema N. Corp., 876 F.2d at 140. The defendants argue that, like a corporation, a government cannot act for itself and that, therefore, acts of high government officials should be deemed acts of the government itself rather than acts of the government's agent.

However, there are no cases that apply this rationale to a government. On the other hand, there is some authority that indicates that the regular rule of agency applies to governments, and that therefore a government official would require written authorization to bind the government to a contract for the sale of land. See 121-129 Broadway Realty, Inc. v. City of Schenectady, 233 N.Y.S.2d 963, 965 (App. Div. 1962) (per curiam) (noting that a city manager was "no more than the agent of the city" and that "an agent's authorization must be in writing, under the Statute of Frauds"); James v. Gov't of Saint Lucia, No. 5418/07, 2009 WL 1018628, at *5 (N.Y. Sup. Ct. Apr. 16, 2009) (noting that written authorization requirement "applies to conveyances of government-owned real property, with the writing requirement appropriately adapted") (citing City of Schenectady, 233 N.Y.S.2d at 965). The defendants argue that City of Schenectady should not apply to the present case because City of Schenectady involved an offer made as part of the

10

exercise of the city's eminent domain powers.  See City of
Schenectady, 233 N.Y.S.2d at 964.  Moreover, Saint Lucia was
merely allowing a motion to amend.  However, the defendants do
not explain why these clarifications undercut the statements by
New York courts that the written authorization for agents does
apply to governments, and they provide no contrary authority.

    New York law provides a means to establish the authority of
an agent of a foreign government "to execute and deliver in the
name or on behalf of such foreign country, any instrument in
writing granting, assigning, surrendering or in any manner
affecting any estate or interest of such government in real
property within this state" by recording a certified copy of the
authorizing document.  See N.Y. Real Prop. Law § 331.  While
section 331 does not contain a requirement that the authority of
an agent for a foreign government conform to that statute, it
shows that the legislature has provided a ready means for
parties to establish the authority of foreign agents.

    Therefore, the Court concludes that section 5-703 of the
New York General Obligations Law requires written authorization
for the government official to enter into a contract for the
conveyance of real property if the government is to be bound by
that contract.  On its face, section 5-703 requires that there
be written proof of authorization.  While cases have excepted
corporations, those cases have not been extended to governmental

entities and the Court declines to extend them here.  There is
some authority that the requirement of written authorization for
agents does apply to governments, and the legislature has
provided a specific mechanism to verify such written
authorization.  Guedegbe, as Benin's alleged agent, required
written authorization to convey Deed I, and no such written
authorization has been produced.  Therefore, no reasonable jury
could find the statute of frauds was satisfied and the
conveyance of Deed I is void.  Shimoff did not have title to
convey in Deed II, which is therefore also void.

**IV.**

Benin argues that even if Guedegbe did not require written
authorization to convey the property, Guedegbe lacked actual
authority to do so.   "[I]t is axiomatic that the United States
is not bound by the unauthorized acts of its agents."  Doe v.
Civiletti, 635 F.2d 88, 96 (2d Cir. 1980); see also Fed. Crop
Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947) ("[A]nyone
entering into an arrangement with the Government takes the risk
of having accurately ascertained that he who purports to act for
the Government stays within the bounds of his authority.").
Benin argues that the same is true for foreign governments; in
other words, a foreign government is bound by the acts of its

12

agents only when the agent had actual authority.  Moreover,
Benin argues that Guedegbe lacked actual authority under Benin
law.

Benin submits an expert declaration of Professor Theodore
Holo, the current President of the High Court of Benin, stating
that under Benin law only the Council of Ministers has the legal
authority to authorize the sale of government real property, and
that any such authorization must be in a writing approved by
both the Council of Ministers and the Ministry of Finance.
(Holo Decl. ¶¶ 6, 8.)   The ambassador and foreign minister of
Benin would only have authority to convey the property upon the
instructions of the Council of Ministers.  (Holo Decl. ¶ 6.)
Moreover, Professor Holo inquired as to whether the Council of
Ministers ever considered the sale of the property at issue in
this case, and was told that it did not and that no written
authorization for the sale exists.  (Holo Decl. ¶¶ 6, 11.)  No
written authorization or any other evidence that the sale was
approved has been submitted.  Therefore, Guedegbe lacked the
actual authority to convey the property on behalf of Benin.

Matters of foreign law are questions of law for the court.
See Fed. R. Civ. P. 44.1.  The only evidence of Benin law is
from the plaintiff's experts, and nothing in the record
contradicts Professor Holo.  The defendants argue that Benin
does not keep good records, and that there could have been such

authorization even though it has not been produced.  However,
Professor Holo declares that he searched for the appropriate
records and that no such authorization exists.  Therefore, all
of the evidence submitted in this case supports the plaintiff's
claim that Guedegbe lacked actual authority to convey the
property.  See Storr v. Nat'l Def. Sec. Council of the Republic
of Indonesia-Jakarta, No. 95 Civ. 9663, 1997 WL 633405, at *2
(S.D.N.Y. Oct. 14, 1997), aff'd, 164 F.3d 619 (2d Cir. 1998)
(finding plaintiff failed to raise any serious claim of actual
authority when all evidence supported defendant foreign
government's argument against actual authority).

There is some dispute over the proper law to apply
regarding actual authority, but that dispute does not alter the
outcome of this case.  Even if New York law applies, New York
must look to the law of Benin to determine the actual authority
of an agent of the Benin government.  See Anglo-Iberia Under
Writing Mgmt. Co. v. PT Jamsostek, No. 97 Civ. 5116, 1998 WL
289711, at *3 (S.D.N.Y. June 4, 1998), aff'd in relevant part,
235 F. App'x 776, 782 (2d Cir. 2007) (applying Indonesian law to
determine actual authority of Indonesia official).  Moreover,
New York law does not speak to the question of which officials
have the actual authority to act on behalf of Benin.  The
defendants have suggested no general principle of actual

authority or New York law that would override Benin law on the
question of the actual authority of its agents.

**V.**

The defendants argue that even if Guedegbe lacked actual
authority to convey Deed I, he had apparent authority to do so.
The defendants argue Guedegbe had apparent authority to sell the
property because Shimoff and her father negotiated the sale with
Adechi and Guedegbe, and because Koller now asserts that he had
a conversation with Biaou in which Biaou confirmed Guedegbe's
authority.  The plaintiff responds that actual, not merely
apparent, authority is necessary to convey title to real
property on behalf of a sovereign nation, and that in any event
Guedegbe did not have apparent authority to do so.

In general, apparent authority is insufficient in dealing
with the federal or state governments.  A person who contracts
with a government agent purporting to act on behalf of the
government does so at the individual's peril if the agent is
unauthorized.  See Merrill, 332 U.S. at 384; Doe, 635 F.2d at
96; see also Benin, 483 F. Supp. 2d at 318 n.7.  The Court of
Appeals for the Second Circuit has, on one occasion, suggested
that a foreign government could be bound by the acts of its
agents when the agent has apparent authority.  See First Fid.

Bank, N.A. v. Gov't of Antigua & Barbuda-Permanent Mission, 877 F.2d 189, 193 & 195 (2d Cir. 1989).  Benin argues that First Fidelity merely assumed without deciding that a foreign government could be bound by agents acting with merely apparent authority, and that other courts have rejected this assumption. See Velasco v. Gov't of Indon., 370 F.3d 392, 400 (4th Cir. 2004) (rejecting First Fidelity as lacking "substantial explanation" and concluding that apparent authority is insufficient to bind a foreign sovereign); Phaneuf v. Republic of Indon., 106 F.3d 302, 308 & n.4 (9th Cir. 1997) (rejecting First Fidelity as merely an assumption with "no analysis or explanation" and holding that an agent must have actual authority to bind a foreign government); see also Dale v. Colagiovanni, 443 F.3d 425, 428 (5th Cir. 2006) (agreeing with Courts of Appeals for the Fourth and Ninth Circuits that apparent authority is insufficient to bind a foreign government).

In any event, Guedegbe lacked even apparent authority to convey the property on behalf of Benin.  Under New York law, Benin is only bound by the actions of its agents on the basis of apparent authority if a third party reasonably relies on a misrepresentation of the agent because of Benin's misleading conduct.  See Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders in het Kapitaal Van Saybold Int'l B.V. v.

Schreiber, 407 F.3d 34, 56 (2d Cir. 2005).  The defendants allege that Adechi and Biaou, Benin's United Nations Ambassador and Foreign Minister, informed the defendants that Guedegbe had the authority to convey the property, and therefore it was reasonable for the defendants to rely on those representations at closing.

However, it is plain that the defendants were aware that they needed to obtain written authorization for Guedegbe to convey the property.  The Chasky letter was drafted to indicate the need for the written authorization, and to provide some assurance that it would be forthcoming.  However, it is undisputed that the appropriate written authorization was never provided and it was unreasonable for the defendants to close the transaction without receiving the required written authorization.

Moreover, the defendants had a duty to inquire into the status of Guedegbe's authority.  In New York, a third party has a duty to inquire into an agent's authority when "(1) the facts and circumstances are such as to put the third party on inquiry, (2) the transaction is extraordinary, or (3) the novelty of the transaction alerts the third party to a danger of fraud." FDIC v. Providence Coll., 115 F.3d 136, 141 (2d Cir. 1997) (internal citation omitted).  At the closing of Deed I, Chasky made it clear that written authorization would be required for Guedegbe

17

to convey the property.  The defendants were therefore on notice that because the written authorization was not forthcoming, they should inquire as to Guedegbe's authority.  Courts have cautioned that a party purchasing government property should be particularly cautious to ensure that the sale is properly authorized.  See Merrill, 332 U.S. at 384 ("[A]nyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority."); Benin, 483 F. Supp. 2d at 318 n.7 ("[B]efore a purchaser attempted to pay for a federal courthouse and claim that he or she was a good faith purchaser without notice of a prior fraud, the purchaser would be well served to confirm the bona fides and authorization of the seller.")

Therefore, even if a foreign government can be bound by its agent acting with apparent authority, the defendants could not reasonably rely on Guedegbe's purported authority when the defendants failed to ascertain properly the basis of his alleged authority.

**VI.**

The defendants make a number of additional arguments that are likewise unavailing.

18

**A.**


The defendants argue that they are entitled to the benefits
of the partial performance exception to the statute of frauds,
citing New York General Obligations Law section 5-703(4).
However, the partial performance exception merely permits a
court to compel specific performance when there has been part
performance.  N.Y. Gen. Oblig. Law § 5-703(4).  None of the
parties have sought specific performance in this case.

Benin has not sought specific performance of a real estate
contract.  It denies that it entered into any such contract.
The defendants have not sought specific performance and, in any
event, specific performance of a contract would not be available
against a government based on the unauthorized acts of a
government agent.  See, e.g., Doe, 635 F.2d at 89-97.


**B.**


The defendants argue that they are entitled to equitable
estoppel because Benin allegedly cloaked Guedegbe with apparent
authority.  However, because it "implicates the interest of the
citizenry as a whole, such an estoppel must be supported by
proof that the government's conduct was willful, wanton, or

reckless.  It follows that equitable estoppel against the government is foreclosed in all but the rarest cases." <u>Coney Island Resorts, Inc. v. Giuliani</u>, 103 F. Supp. 2d 645, 657 (E.D.N.Y. 2000), <u>aff'd</u>, 11 F. App'x 11 (2d Cir. 2001) (internal citations and quotation marks omitted).  The defendants provide no reason why a foreign government would be treated differently. The circumstances of this case do not support a claim of equitable estoppel against the Government of Benin, and indeed it was the defendants who acted recklessly in failing to get the written authorization of the person with whom they dealt.

C.

The defendants argue that they are entitled to the benefit of the two innocents doctrine.  As between the defendants and the Government of Benin, the defendants say, the harm from the alleged wrongdoers should fall on Benin because it was in a better position to stop its own agent, and any alleged fraud would have been committed by Benin's own officials.  <u>See Bunge Corp. v. Mfrs. Hanover Trust Co.</u>, 286 N.E.2d 903, 905 (N.Y. 1972) (describing doctrine of equitable estoppel as "where one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss, must sustain it") (internal quotation marks omitted).  The two

20

innocents doctrine is a form of equitable estoppel, and does not apply against Benin for the reasons explained above.

Moreover, Shimoff was on notice that she should have obtained written confirmation of Guedegbe's authority to enter into the transaction, and she did not. Because she did not obtain the confirmation she knew she needed, the two innocents defense is unavailable.

### D.

Mezei argues that she was an innocent purchaser under New York Real Property Law § 266. However, as this Court has already noted, a void deed cannot convey title even to a bona fide purchaser for value. See Benin, 483 F. Supp. 2d at 316. Because Deed I is void, Shimoff had no title to convey to Mezei and Deed II is likewise void.

### E.

Finally, the defendants make various equitable appeals, arguing that the burden should not fall on Shimoff and Mezei. However, Shimoff and Mezei are sophisticated parties involved in two significant transactions, and it is equitable to hold them to the requirements of the law. Shimoff turned the property

around in a year and nearly doubled the value of the property.
Mezei was able to pay $1,250,000 for a vacant lot.  These are
parties who are capable of making the necessary inquiries to
ensure that their real estate transactions are properly
conducted.

CONCLUSION

For the reasons stated above, the Court **grants** the
plaintiff's motion for summary judgment and **denies** the
defendants' cross motion for summary judgment.

The Clerk is directed to close Docket Nos. 122 and 135.

**SO ORDERED.**

**Dated:** **New York, New York**
**September 8, 2010**

John G. Koeltl
United States District Judge